Nos. 23-1032, 23-1073

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

DAHUA TECHNOLOGY USA INC.
and
HIKVISION USA, INC.,
Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION
and
UNITED STATES OF AMERICA,
Respondents.

On Petition for Review of an Order of the
Federal Communications Commission

**PETITIONER HIKVISION USA, INC.'S
MOTION TO ENFORCE THE MANDATE**

Tobias S. Loss-Eaton
Sidley Austin LLP
1501 K Street NW
Washington DC 20005
tlosseaton@sidley.com

Christopher J. Wright
Timothy J. Simeone
John T. Nakahata
HWG LLP
1919 M St. NW, 8th Floor
Washington, DC 20036
(202) 730-1300
cwright@hwglaw.com

January 16, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

GLOSSARY ........................................................................................... iv

INTRODUCTION ....................................................................................1

BACKGROUND ......................................................................................4

   *1.   The Commission's Order and this Court's Decision* ........................4

   *2.   The Freeze on Hikvision's Account* ...............................................7

   *3.   The Commission's Failure to Rule on Hikvision's Compliance Plan* ..............9

   *4.   Harm to Hikvision* .......................................................................14

   *5.   Hikvision's Emergency Requests for Commission Action* ............16

ARGUMENT .........................................................................................16

   A.   The Commission has Unlawfully Readopted the Across-the-Board Freeze the Court Struck Down. ...............................................18

   B.   This Court's Precedents Support Enforcing the Mandate Here. ...................20

   C.   The Court Should Impose a Strict Time Limit on Commission Action. .......22

CONCLUSION ......................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Atl. City Elec. Co v. FERC*,
295 F.3d 1 (D.C. Cir. 2002) ...................................................................21

*Atl. City Elec. Co. v. FERC*,
329 F.3d 856 (D.C. Cir. 2003) ................................................ 17, 20, 21

*Hikvision USA, Inc. v. FCC*,
97 F.4th 938 (D.C. Cir. 2024) ....................... 1, 6, 7, 9, 14, 17, 18, 19

*In re Core Commc'ns Inc., Inc.*,
531 F.3d 849 (D.C. Cir. 2008) ...............................................................22

*In re Ctr. for Biological Diversity*,
53 F.4th 665 (D.C. Cir. 2022) ...............................................................22

*Int'l Ladies' Garment Workers' Union v. Donovan*,
722 F.2d 795 (D.C. Cir. 1983) ...............................................................20

*Int'l Ladies' Garment Workers' Union v. Donovan*,
733 F.2d 920 (D.C. Cir. 1984) ................................................ 17, 18, 20, 21

*Int'l Union v. OSHA*,
976 F.2d 749 (D.C. Cir. 1992) ...............................................................22

**Statutes**

47 U.S.C. § 1601 ....................................................................................2

47 U.S.C. § 1601(a) ...............................................................................2

47 U.S.C. § 302a .....................................................................................4

47 U.S.C. § 303 .......................................................................................4

John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L.
No. 115-232, § 889(f)(3)(B), 132 Stat. 1636 ................................ 2, 5, 7

Secure and Trusted Communications Networks Act of 2019, Pub. L. No. 116-124,
134 Stat. 158 ...........................................................................................2

Secure Equipment Act of 2021, Pub. L. No. 117-55, 135 Stat. 423 ................. 1, 2, 5

**Administrative Decisions**

Protecting Against National Security Threats to the Communications Supply Chain Through the Equipment Authorization Program, 88 Fed. Reg. 7592 (Feb. 6, 2023) ....................................................................................................................7

*Protecting Against National Security Threats to the Communications Supply Chain*, Report & Order et al., 37 FCC Rcd. 13493 (rel. Nov. 25, 2022).. 1, 5, 6, 9, 19

**Other Authorities**

*Public Safety and Homeland Security Bureau Announces Publication of the List of Equipment and Services Covered by Section 2 of the Secure Networks Act*, Public Notice, 36 FCC Rcd. 5534 (rel. Mar. 12, 2021) .....................................................2

# GLOSSARY

| | |
|---|---|
| Covered List | Covered List of communications equipment pursuant to the Secure and Trusted Communications Networks Act of 2019, Pub. L. No. 116-124, 134 Stat. 158 (codified as amended at 47 U.S.C. §§ 1601–1609), and 47 CFR §§ 1.50002, 1.50003 |
| FCC or Commission | Federal Communications Commission |
| FERC | Federal Energy Regulatory Commission |
| Hikvision | Hikvision USA Inc. |
| Order | *Protecting Against National Security Threats to the Communications Supply Chain*, Report & Order et al., 37 FCC Rcd. 13493 (rel. Nov. 25, 2022) |

# INTRODUCTION

On April 2, 2024, this Court vacated a key portion of the Federal Communications Commission's *Order* interpreting the Secure Equipment Act.[1] The Court first upheld the Commission's decision to put Petitioner Hikvision USA Inc.'s ("Hikvision") telecommunications and video surveillance equipment on a "covered list" that prohibits authorizations of such equipment when marketed or sold to provide physical security surveillance of "critical infrastructure." *Hikvision*, 97 F.4th at 944. But the Court then held that the Commission's interpretation of "critical infrastructure" was "overbroad, unexplained, and arbitrary" and vacated that portion of the *Order*. *Id.* at 950. The Court criticized the Commission's overbroad definition for "essentially fr[eezing] all sales of Petitioners' equipment in the United States," and emphasized that the burden was on the Commission to provide a narrower "comprehensible standard" to comply with the statute. *Id.*

The Commission has ignored this Court's decision, and has instead doubled down on its total ban on approvals of Hikvision equipment, regardless of whether that equipment is even arguably "covered" by the statutory regime. For example, as Hikvision explained to the Commission, one of its affiliates makes a cordless

---

[1] *See Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 950 (D.C. Cir. 2024); *Protecting Against National Security Threats to the Communications Supply Chain*, Report & Order et al., 37 FCC Rcd. 13493 (rel. Nov. 25, 2022) ("*Order*").

wet and dry vacuum cleaner that has *no* telecommunications transmission capability and *no* camera.  *See* Letter from John T. Nakahata, counsel to Hikvision, to Marlene H. Dortch, Secretary, FCC, ET Docket No. 21-232 (filed Oct. 8, 2024) ("October 8, 2024 Ex Parte"), attached as Composite Exhibit A.[2]  This vacuum cleaner is not even potentially covered by the Secure Equipment Act[3]—it is not "telecommunications" or "video surveillance equipment" and it could not possibly be used to provide surveillance of "critical infrastructure."[4]

Notwithstanding this Court's decision invalidating the Commission's total ban on approvals of Hikvision equipment, the agency continues to make it impossible for the company to get even such obviously *non*-covered equipment approved for sale in the United States.  The Commission has done so in two ways. First, the Commission has indefinitely continued an "interim" freeze that blocks

---

[2]  Composite Exhibit A contains communications in chronological order between counsel for Hikvision and the FCC.

[3]  Secure Equipment Act of 2021, Pub. L. No. 117-55, 135 Stat. 423 ("Secure Equipment Act") (codified at 47 U.S.C. § 1601) (citing Secure and Trusted Communications Networks Act of 2019, Pub. L. No. 116-124, 134 Stat. 158, 159 (codified at 47 U.S.C. § 1601(a)), incorporating by reference John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, § 889(f)(3)(B), 132 Stat. 1636, 1918 ("National Defense Authorization Act for Fiscal Year 2019")).

[4]  *See Public Safety and Homeland Security Bureau Announces Publication of the List of Equipment and Services Covered by Section 2 of the Secure Networks Act*, Public Notice, 36 FCC Rcd. 5534, 5536 (rel. Mar. 12, 2021) ("Covered Equipment List").

Hikvision from submitting *any* application for approval of *any* device produced by the company or its subsidiaries and affiliates. Second, the Commission has relied on the fact that Hikvision does not have a "Compliance Plan" in place—as the *Order* requires for new Hikvision equipment approvals—even while *refusing* to consider the simple Compliance Plan that the company submitted long before this Court's decision.[5] Both measures effectively function as Commission-imposed, across-the-board prohibitions on all new approvals for Hikvision and its affiliates.

But the Commission is not entitled to pretend that this Court's decision never happened. The Court should enforce its mandate invalidating the Commission's across-the-board ban by requiring the agency to immediately lift the freeze that prevents Hikvision from applying for authorizations to sell equipment in the United States even for equipment that is not "covered" and *cannot* implicate the "critical infrastructure" restriction. In addition, the fastest way to ensure compliance with this Court's directive to provide a "comprehensible standard" for

---

[5] On August 7, 2023, Hikvision filed its proposed Compliance Plan, consistent with the Commission's directive in the *Order*, and asked that the Commission immediately adopt it. That Compliance Plan has been ripe for action by the Commission via informal adjudication since it was filed.

In response to a request made by Commission representatives, on April 29, 2024, Hikvision provided the Commission a non-confidential, public version of the Compliance Plan that was substantively similar to Hikvision's confidential August 2023 filing. *See* Compliance Plan, ET Docket No. 21-232 (filed Apr. 29, 2024), attached as Exhibit B. The Commission has not and presumably does not intend to request public comment on Hikvision's Compliance Plan.

"critical infrastructure" would be for the Court to require the Commission to either promptly approve Hikvision's Compliance Plan or issue a final, appealable order explaining why the Plan is inadequate in any specific respect. The Court should require the Commission to act on the Compliance Plan within a set time—perhaps four months. Because of the Commission's intransigence, Hikvision has lost well over ████████ to date,[6] while American consumers are deprived of the company's new product offerings.

## BACKGROUND

*1. The Commission's Order and this Court's Decision:* Hikvision and its subsidiaries and affiliates manufacture and sell in the United States a broad range of products, including products for smart home technology, industrial automation, and other markets, in addition to residential and small-business security.[7] Like all devices that use electric current and thus emit radio frequency energy, in order to be sold in the United States, Hikvision's products must demonstrate compliance with the Commission's emissions regulations by obtaining equipment authorization under Title III of the Communications Act of 1934. *See* 47 U.S.C. §§ 302a, 303.

---

[6] *See* Declaration of Aiping Gao ¶ 7, attached as Exhibit C ("Gao Decl."). There have been no material changes to the information contained in this Declaration since it was submitted to the Commission in December 2024.

[7] *See generally id.*

The Secure Equipment Act of 2021 required the Commission to "clarify" that it will "no longer review or approve any application for equipment authorization for equipment that is on the list of covered communications equipment or services" that the Commission publishes.[8]  The National Defense Authorization Act for Fiscal Year 2019[9] expressly limits that "covered" equipment, whose authorization the Commission can restrict, to (i) "video surveillance and telecommunications equipment" that is (ii) used "[f]or the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes."

On November 25, 2022, the Commission issued an *Order* implementing the Secure Equipment Act, indicating that it would not process future equipment authorizations for covered equipment until the company obtains Commission approval for a Compliance Plan ensuring that such covered equipment will not be marketed or sold for prohibited purposes, including "physical security surveillance of critical infrastructure." *Order* ¶ 180.  *Only* covered equipment—again, (i) video surveillance and telecommunications equipment that is (ii) used for the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes—is subject to the

---

[8]   *See* Secure Equipment Act § 2(a)(2).

[9]   *See* National Defense Authorization Act for Fiscal Year 2019 § 889(f)(3)(B).

*Order'*s compliance plan precondition. The Commission further found that "critical infrastructure" includes "any systems or assets, physical or virtual, connected to . . . sixteen critical infrastructure sectors"—including *every* significant sector, such as food, energy, health care, and many others. *Id.* ¶ 212; *see also Hikvision*, 97 F.4th at 944.

Hikvision sought this Court's review of the *Order*. The Court's April 2024 decision rejected Hikvision's argument that even its telecommunications and video surveillance equipment should not be "covered" at all, *see Hikvision*, 97 F.4th at 944, but agreed with the company that the Commission's definition of "critical infrastructure" was "unjustifiably broad" and therefore "arbitrary and capricious." *Id.* at 948. The Court observed that "[t]he FCC's definition threatens to envelop ever-broadening sectors of the economy" because it "reads the word 'critical' out of the statute and applies the equipment-authorization ban to all 'infrastructure.'" *Id.* at 950. The Court also faulted the Commission for freezing Hikvision's business while "fail[ing] to provide comprehensible guidance about what falls within the bounds of 'critical infrastructure'":

> The Commission has essentially frozen all sales of [Hikvision's] equipment in the United States until [Hikvision] can submit a marketing plan which demonstrates that their products will not be used for 'physical security surveillance of critical infrastructure.' Without a clear understanding of what constitutes a 'connect[ion] to' critical infrastructure, [Hikvision] will face significant difficulty in developing such a marketing plan. The FCC provides no justification for imposing such a burden on [Hikvision].

*Id.* (citation omitted).  This Court therefore "vacate[d] the portions of the FCC's order defining 'critical infrastructure' and remand[ed] to the Commission to comport its definition and justification for it with the statutory text" of the National Defense Authorization Act for Fiscal Year 2019.  *Id.*

     ***2. The Freeze on Hikvision's Account:***  The Commission's 2022 *Order* also adopted a purportedly short "interim" freeze on Hikvision's ability to introduce *any* new products into the United States for the period from the *Order*'s release on November 25, 2022, until February 6, 2023, the date the rules took effect.  *See* Protecting Against National Security Threats to the Communications Supply Chain Through the Equipment Authorization Program, 88 Fed. Reg. 7592, 7622 (Feb. 6, 2023) ("The freeze was limited to the brief time period during which the rules implementing the statutory mandate were not yet effective.").  The Commission effectuated this "interim" measure by freezing Hikvision's parent company's account on the FCC's equipment authorization system.

     When the effective date came and went, however, the Commission continued this formal freeze without explanation or even notice to Hikvision.  The company discovered that the freeze was ongoing only when it sought to file a form through its account and realized it could not do so.  *See* Declaration of Long Cheng

¶ 4, attached as Exhibit D ("Cheng Decl.").[10]  The ongoing freeze prevents the company from filing *any* applications for equipment authorization, even for products like vacuum cleaners that are not even arguably "covered" by the statutory restrictions because they are not telecommunications or video surveillance equipment.

Hikvision has engaged in vigorous efforts at the Commission to unfreeze its account, or at least obtain some explanation for why it faces this across-the-board freeze untethered to any statutory prohibition.  Those efforts intensified after this Court's finding in *Hikvision* that the Commission's total ban on new approvals was arbitrary and capricious.

On May 16, 2024, Siyu Hu, a Hikvision executive, submitted a "Help" request through the FCC's support portal seeking assistance to lift the freeze on Hikvision's account.  *Id.* ¶ 5.  Ms. Hu received no response and determined—by checking the tracking number for her request about ten days after submitting it— that the support matter number had been closed.  *Id.*  Then, on or around May 21, 2024, Mr. Cheng emailed the Commission's Office of Engineering and Technology, asking it to investigate the matter and unlock Hikvision's account.  *Id.* ¶ 6.  The Office of Engineering and Technology did nothing.  *Id.* ¶ 7.  Mr. Cheng

---

[10] There have been no material changes to the information contained in the Declaration of Long Cheng since it was submitted to the Commission in December 2024.

followed up with the Office of Engineering and Technology on or about June 5, 2024, advising that it was important to address the freeze of Hikvision's account because "the matter influences [Hikvision] a lot." *See id.* ¶ 8 and Exhibit C thereto. Hikvision has never even received any acknowledgment of these requests.

### 3. The Commission's Failure to Rule on Hikvision's Compliance Plan:

This Court vacated "the portions of the FCC's order defining 'critical infrastructure'" and required the Commission to "comport its definition and justification for it with the statutory text," *Hikvision*, 97 F.4th at 950, and specifically to provide a "comprehensible standard" for determining what infrastructure is critical. As noted above,[11] Hikvision had submitted a Compliance Plan addressing that issue on August 7, 2023, more than 17 months ago, in response to a requirement in the Commission's *Order*. *See Order* ¶¶ 264–66. The Commission could have acted on that Compliance Plan at any time since August 2023, but it has not done so or done anything else to address this Court's mandate to provide a comprehensible standard.

The practical effect of this ongoing refusal to even consider Hikvision's Compliance Plan is a *second* Commission-imposed across-the-board ban on new approvals in parallel to the ongoing formal freeze of Hikvision's account. In other words, like the formal freeze, the Commission's refusal to even consider *any*

---

[11] *See supra* n.5.

9

authorization applications on the ground that Hikvision lacks a Compliance Plan *that would not even arguably apply to non-covered equipment* creates a complete bar to new approvals of Hikvision equipment, whether covered or not.

The company has persistently sought the removal of this de facto ban on approvals without success. For example, on April 29, 2024, just weeks after the Court's decision, Hikvision filed a "Request for Expedited Approval of Compliance Plan in Light of the D.C. Circuit's Decision in *Hikvision USA v. FCC*." *See* Request for Expedited Approval, ET Docket No. 21-232 (filed Apr. 29, 2024), attached as Exhibit E. That filing explained that the Compliance Plan's proposed definition of critical infrastructure "draws from the regulations prescribed by the Committee on Foreign Investment in the United States in 31 C.F.R. § 800, which includes an appendix specifically listing 'critical infrastructure' systems and assets." *Id.* at 5. Hikvision noted that this definition gives meaning to the term "critical" as required by this Court and offers "protection for infrastructure across essentially all economic sectors," while also "hew[ing] to Congress' statutory definitions." *Id.* The Compliance Plan also contains a common-sense description of "video surveillance equipment" and "telecommunications equipment" under which many categories of equipment produced by Hikvision and its subsidiaries and affiliates—equipment like the vacuum, but also things like thermography cameras, scanning devices for locating metal or other objects, and data storage

devices—plainly fall outside the scope of those terms. *See* Emergency Request for Commission Action on Hikvision's Compliance Plan, ET Docket No. 21-232 at 10–11 (filed Dec. 16, 2024), attached as Exhibit F.

On May 28, 2024, counsel for Hikvision contacted representatives from the FCC Office of Engineering and Technology to request a follow-up meeting to discuss Hikvision's pending Compliance Plan. *See* E-mail from John T. Nakahata, Counsel to Hikvision, to Paul Murray and Howard Griboff, Office of Engineering and Technology (May 28, 2024), attached as Composite Exhibit A. Counsel followed up on July 14, 2024 and again on August 19, 2024 to request a meeting date. *See* E-mail from John T. Nakahata, Counsel to Hikvision, to Paul Murray and Howard Griboff, Office of Engineering and Technology (July 14, 2024), attached as Composite Exhibit A; E-mail from John T. Nakahata, Counsel to Hikvision, to Dana Shaffer, Paul Murray, and Howard Griboff, Office of Engineering and Technology (Aug. 19, 2024), attached as Composite Exhibit A. On August 28, 2024, counsel for Hikvision met with representatives from the Commission's Office of Engineering and Technology, its Public Safety and Homeland Security Bureau, and its Office of General Counsel, and urged that the most expeditious way to address this Court's remand as to the scope of "critical infrastructure" would be through approval of the Plan. *See* Letter from John T. Nakahata, counsel

to Hikvision, to Marlene H. Dortch, Secretary, FCC, ET Docket No. 21-232 (filed Aug. 30, 2024), attached as Composite Exhibit A.

Counsel for Hikvision, together with senior representatives of Hikvision, also met with advisors to Chairwoman Rosenworcel, seeking to break the logjam at the Commission. *See* Letter from John T. Nakahata, counsel to Hikvision to Marlene H. Dortch, Secretary, FCC, ET Docket No. 21-232 (filed Oct. 4, 2024), attached as Composite Exhibit A. Hikvision again requested that the Commission expeditiously approve Hikvision's Compliance Plan in response to this Court's decision or explain why it is inadequate in any specific respect. The Commission did nothing.

On October 8, 2024, counsel for Hikvision followed up with a letter to the Commission asking that it at least begin immediately processing applications submitted by Hikvision and its subsidiaries and affiliates for equipment that is plainly *not* "telecommunications equipment" or "video surveillance equipment." *See* October 8, 2024 Ex Parte at 1, attached as Composite Exhibit A. Counsel provided the example noted above of a wet and dry vacuum cleaner with *no* telecommunications or video capability. This vacuum cleaner "cannot be classified as either telecommunications equipment or video surveillance equipment," but had not been authorized for sale in the United States *and cannot be under the Commission's ongoing total ban. Id.*

In the same letter, counsel also pointed out that, on July 30, 2024, a Commission-authorized test lab had submitted a Knowledge Database inquiry to the Office of Engineering and Technology requesting guidance on an equipment authorization for a product manufactured by Hikvision's subsidiary, Hangzhou Hikrobot Co., Ltd.  The lab stated that Hangzhou Hikrobot Co., Ltd. sought an FCC ID for a "mobile robot, which is used for moving items within a warehouse," and which is neither covered equipment nor employed in any way connected to critical infrastructure.  *Id.* at 2.  The Office of Engineering and Technology responded only that "[n]either Hikvision nor any of its subsidiaries or affiliates has a Commission-approved plan for the sale and marketing of equipment" and "[a]s such, neither Hikvision nor any of its subsidiaries or affiliates may obtain an authorization for ANY telecommunication or video surveillance equipment."  *Id.* at 3.  In other words, the Commission's Office of Engineering and Technology stated that the *Commission's* refusal to consider Hikvision's Compliance Plan means that Hikvision cannot seek authorizations even for *non*-covered equipment.

Further follow-ups with the Commission resulted only in a communication from the Office of Engineering and Technology that the Commission would provide a further response "as soon as practicable."  *See* E-mail from Dana Shaffer, Office of Engineering and Technology, to John Nakahata, Counsel to Hikvision (Oct. 30, 2024), attached as Composite Exhibit A.  The Commission has never

explained why it has not been "practicable" to respond, and there has been no
response.

*4. Harm to Hikvision:*  Because of the Commission's across-the-board ban,
Hikvision cannot obtain authorizations for two broad categories of products that
are unequivocally permitted into the U.S. market under the statutory regime.  First,
this broad ban prevents Hikvision and its subsidiaries and affiliates from obtaining
authorizations for products that are *not* telecommunications or video surveillance
equipment at all—such as the vacuum cleaner discussed above[12]—and therefore
are not implicated in any way by the statutory scheme.  Second, the across-the-
board ban prevents the company from obtaining authorizations to sell covered
products such as its video surveillance equipment even for *permissible* uses like
protecting property (such as private homes, a laundromat, or a convenience store)
that is plainly not critical infrastructure.  *See generally* Comments of Hikvision
USA, Inc. (Corrected) at 36, ET Docket No. 21-232 (filed Sept. 20, 2021), attached
as Exhibit G.  *See also Hikvision*, 97 F.4th at 949 (observing that the "FCC did not
rebut [Hikvision's] argument that 'coffee shops, residential apartment buildings,

---

[12] The warehouse robotics market is an area of enormous opportunity in the United
States.  Yet Hikvision, whose robotics business accounted for approximately
███████ in revenues worldwide, Gao Decl. ¶ 13, is unable to introduce
new products in this segment to the U.S. market.

used car lots, and dry-cleaning stores' could all plausibly fall within the Commission's definition" of critical infrastructure).

Hikvision's inability to obtain any new approvals has prevented it from introducing hundreds of new Hikvision products into the United States. Since 2015, Hikvision has obtained over ▮▮▮ FCC equipment authorizations. Gao Decl. ¶ 3. But Hikvision's most recent authorization was obtained more than two years ago, on November 10, 2022. *Id.* Since the Commission's *Order* on November 25, 2022, Hikvision has not been able to obtain *any* new equipment authorizations from the FCC—the company can only sell products in the United States that were *already* authorized before the *Order* was issued. *Id.* ¶ 4. As a result, the number of new products that Hikvision can introduce into the U.S. market has sharply declined. In 2020, Hikvision introduced ▮▮ new products to the U.S. market. *Id.* ¶ 6. In 2021, that number increased to ▮▮. *Id.* But since 2022, that number has plummeted. In 2023, only ▮ new products were introduced to the U.S. market—all of which were approved prior to November 2022. *Id.* And in 2024, only ▮ new products—again, all of which were approved prior to November 2022—were introduced in the United States. *Id.*

This ban on new products (including updated versions of existing products) has caused a steep decline in U.S. sales. In 2022, Hikvision's revenue from sales in the United States totaled approximately ▮▮▮▮▮▮. *Id.* ¶ 7. In 2023, revenue

dropped to ▮▮▮▮▮▮, and as of December 2024, revenue has dropped further to ▮▮▮▮▮▮. *Id.*

5. ***Hikvision's Emergency Requests for Commission Action:*** On December 16, 2024, Hikvision filed two Emergency Requests for Commission Action. *See* Emergency Request for Commission Action on Hikvision's Equipment Authorization Account, ET Docket No. 21-232 (filed Dec. 16, 2024), attached as Exhibit H; Emergency Request for Commission Action on Hikvision's Compliance Plan ET Docket No. 21-232 (filed Dec. 16, 2024), attached as Exhibit F. The first called on the Commission to promptly lift its freeze on Hangzhou Hikvision Digital Technology Co., Ltd.'s equipment authorization account. The second pointed out that the Commission has not responded to this Court's mandate in any way, and argued that promptly approving Hikvision's Compliance Plan is the most expeditious way to do so.

Hikvision advised the Commission that, if the Commission did not act on its Emergency Requests by January 15, 2025, Hikvision would seek relief from this Court. As of today, the Commission has not acted.

## ARGUMENT

The Commission is not entitled to ignore this Court's decisions. Yet that is precisely what is happening. This Court vacated "the portions of the FCC's order defining 'critical infrastructure'" that "ha[d] essentially frozen all sales of

Petitioners' equipment in the United States," and placed the responsibility squarely on the Commission to provide a "justification for imposing such a burden on [Hikvision]." *Hikvision*, 97 F.4th at 950. Yet the Commission continues to "essentially fr[eeze] all sales" by Hikvision, *id.*, both by (1) preventing the use of Hikvision's parent company's FCC account without explanation; and (2) maintaining that Hikvision cannot submit *any* new applications for approvals without a Compliance Plan in place—all while consistently refusing for over 17 months to even consider Hikvision's Plan. Moreover, the Commission has taken *no* action whatsoever in response to this Court's requirement to provide a "comprehensible standard" for critical infrastructure. *Id.*

This flouting of the Court's order should not be allowed to continue. "The power of an original panel to grant relief enforcing the terms of its earlier mandate is clearly established in this Circuit . . . [including] in cases that have been remanded directly to an administrative agency." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) ("*Garment Workers II*"); *see also Atl. City Elec. Co. v. FERC*, 329 F.3d 856, 858 (D.C. Cir. 2003) ("[T]his Court has the power to enforce its mandates, including the power to 'correct any misconception of its mandate by a[n] . . . administrative agency subject to its authority.'"). This power does not require a movant to "establish irreparable injury" because it flows instead from "the interest of the judicial branch in seeing

that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Garment Workers II*, 733 F.2d at 922. Regardless, prompt action is warranted because the Commission's refusal to comply with the Court's decision is causing significant, ongoing, and unrecoverable harm.

### A. The Commission has Unlawfully Readopted the Across-the-Board Freeze the Court Struck Down.

This Court struck down the Commission's across-the-board ban on new approvals of Hikvision equipment as overbroad *and* acknowledged the time-sensitivity of correcting that error.

The Court began by noting that the Covered List, as applied to Hikvision, is limited to (1) "video surveillance" and "telecommunications" equipment, and (2) only to the extent such equipment is "used for the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes." *Hikvision*, 97 F.4th at 942 (quoting the Covered Equipment List). The Court faulted the *Order* for failing to "explain why everything 'connected to' any sector or function that implicates national security must be considered 'critical,' especially in light of the Patriot Act's emphasis on particular 'systems and assets' that are 'vital to the United States.'" *Id.* at 949–50. The Court agreed with Hikvision that "the FCC's definition reads the word 'critical' out of the statute," and it held that definition to be arbitrary and capricious because it is "entirely implausible that every single

system or asset that is 'connected to,' for example, the food and agriculture sector, or to the function of supplying water, is 'critical' to the national security of the United States." *Id.* at 950.

The Court also recognized Hikvision's urgent need for a way forward that is "reasonable [and] consistent with the statute." *Id.* Given this exigency, the Court found that Hikvision could *not* be required to proceed "by submitting a request for a declaratory ruling"—"such a requirement is unworkable." *Id.* The Court therefore "vacate[d] the portions of the FCC's order defining 'critical infrastructure' and remand[ed] to the Commission to comport its definition and justification for it with the statutory text." *Id.* By *vacating* the Commission's definition rather than simply remanding, the Court made clear that—pending a new justification by the Commission—there is no longer any legal basis for an across-the-board ban on new approvals of Hikvision equipment.

Yet the Commission continues to act as if this Court's decision never happened. It has transformed the formal "interim" freeze on Hikvision's parent company's account, *see Order* ¶¶ 264–66, into an indefinite one. *See* Cheng Decl. ¶ 4. And by refusing to even address Hikvision's long-pending proposed Compliance Plan, the Commission has transformed the *Order*'s statement that the FCC will not consider any future equipment authorizations until such a Plan is in place, *see Order* ¶ 180, into an additional across-the-board bar to all approvals for

Hikvision *and* its subsidiaries and affiliates. These Commission actions are inconsistent with this Court's decision and together prevent Hikvision from obtaining new approvals even for plainly *non*-covered equipment like the vacuum cleaner discussed above.

## B. This Court's Precedents Support Enforcing the Mandate Here.

This case resembles others where the Court has enforced its mandate, including *Garment Workers II*, 733 F.2d. 920. At an earlier stage in that case, this Court had vacated the Secretary of Labor's recission of rules barring the employment of workers in their homes ("homework"), which had the effect of reinstating the prior restrictions. *See Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 826–28 (D.C. Cir. 1983) ("*Garment Workers I*"). On remand, without notice and comment, the Secretary "temporarily" rescinded the homework restrictions again. *See Garment Workers II*, 733 F.2d at 921. On a motion to enforce the mandate, the original panel of this Court found that the Secretary had unlawfully "reimplemented precisely the same rule that this court vacated as 'arbitrary and capricious' in its first decision," and indicated that the district court "must act forthwith to enforce the mandate and require the Secretary to comply with its terms." *Id.* at 923.

*Atlantic City Electric Co. v. FERC*, 329 F.3d 856 (D.C. Cir. 2003), also applies here. At the earlier stage there, FERC had claimed authority to prohibit

utilities from modifying certain tariff terms, but this Court found that authority exceeded FERC's statutory jurisdiction. *Id.* at 859 (citing *Atl. City Elec. Co v. FERC*, 295 F.3d 1, 13 (D.C. Cir. 2002)). When FERC readopted the vacated requirement on remand, this Court granted a petition to enforce its mandate because it had already "held that FERC simply lacked jurisdiction under the statute to make the order it had purported to enter in the original proceeding[s]." *Id.* at 858.

The facts here parallel *Garment Workers* and *Atlantic City*. This Court struck down the Commission's across-the-board ban on new Hikvision equipment authorizations as arbitrary and capricious. On remand, the Commission doubled down, continuing the formal freeze on Hikvision's parent company's account while also relying on Hikvision's lack of a Compliance Plan—which, again, the Commission refuses to consider—as a further bar to any new authorizations. As in *Garment Workers* then, the Commission has unlawfully "reimplemented precisely the same rule that this court vacated as 'arbitrary and capricious' in its first decision." *Garment Workers II*, 733 F.2d at 923. And like FERC in *Atlantic City*, the Commission here cannot simply readopt the very ban that this Court rejected— here, as there, the agency "simply lacked jurisdiction under the statute to make the order it had purported to enter in the original proceeding[s]." *Atl. City*, 329 F.3d at 858.

### C.   The Court Should Impose a Strict Time Limit on Commission Action.

The Court should enforce its mandate by requiring the Commission to (1) immediately lift the freeze that prevents Hikvision's parent company from even applying for authorization to sell equipment in the United States, even for equipment that is not "covered" and *cannot* implicate the "critical infrastructure" restriction, and (2) act promptly on the Compliance Plan submitted by Hikvision by approving it or issuing a final, appealable order explaining its reasons for not approving the Plan.  The Court should also require the Commission to act on Hikvision's Compliance Plan within a set time—perhaps four months.  *See In re Ctr. for Biological Diversity*, 53 F.4th 665, 672 (D.C. Cir. 2022) (requiring Environmental Protection Agency to issue an order within 10 months); *In re Core Commc'ns Inc., Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (ordering FCC to issue final, appealable order within six months); *Int'l Union v. OSHA*, 976 F.2d 749, 751 (D.C. Cir. 1992) (noting that it is "hard to detect any affirmative evidence of Department compliance with our mandate," and "with the passage of over a year since our initial decision the time for clear evidence of good faith compliance has arrived").  While those other decisions gave the agency from six months to a year to act, the issues there were far more complex than the issues presented here, and Hikvision has provided a relatively short Plan that addresses all the relevant issues.

And again, as discussed above, Hikvision is losing ██████ of dollars every year and American consumers are unable to buy Hikvision's products.

## CONCLUSION

For the foregoing reasons, the Court should require the Commission to act on Hikvision's Compliance Plan within four months and should require the Commission to promptly lift its freeze of Hangzhou Hikvision Digital Technology Co., Ltd.'s equipment authorization account.

Dated: January 16, 2025                          Respectfully submitted,


<u>/s/ Christopher J. Wright</u>

Christopher J. Wright
Timothy J. Simeone
John T. Nakahata
HWG LLP
1919 M St. NW, 8th Floor
Washington, DC 20036
(202) 730-1300
cwright@hwglaw.com

Tobias S. Loss-Eaton
Sidley Austin LLP
1501 K Street NW
Washington DC 20005
tlosseaton@sidley.com

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of January 2025, the foregoing brief was filed

via CM/ECF. Service was accomplished on all parties or their counsel of record

via CM/ECF.

/s/ Christopher J. Wright

Christopher J. Wright

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Times New Roman font.  I further certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f), it contains 5,140 words according to the word-count feature of Microsoft Word.

/s/ Christopher J. Wright
Christopher J. Wright