Nos. 23-1032, 23-1073

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

DAHUA TECHNOLOGY USA INC.
and
HIKVISION USA, INC.,
Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION
and
UNITED STATES OF AMERICA,
Respondents.
_____

On Petition for Review of an Order of the
Federal Communications Commission
_____

# PETITIONER HIKVISION USA, INC.'S
# REPLY ON MOTION TO ENFORCE THE MANDATE
_____

Tobias S. Loss-Eaton
Sidley Austin LLP
1501 K Street NW
Washington DC 20005
tlosseaton@sidley.com

Christopher J. Wright
Timothy J. Simeone
John T. Nakahata
HWG LLP
1919 M St. NW, 8th Floor
Washington, DC 20036
(202) 730-1300
cwright@hwglaw.com

February 24, 2025

**INTRODUCTION**

Seventeen pages into its response, the Commission finally concedes the reality of the current situation: there is a "freeze on Hikvision's applications" that "prevents Hikvision from submitting *any* applications for equipment authorization." Opp. 17[1] (emphasis added). Thus, it is common ground that Hikvision cannot even *seek* Commission approval—and thus cannot obtain a reviewable determination—as to any product, even those that no one would claim are "telecommunications equipment" or "video surveillance equipment." Hikvision cannot ask the FCC to approve, for instance, a vacuum cleaner that has no connectivity of any kind and accordingly cannot fit into either statutory category. And while denying that this freeze is "indefinite," the Commission admits that it will not so much as lay eyes on a Hikvision application until the agency defines "critical infrastructure"—which it "may . . . prefer to explicate . . . in a notice-and-comment rulemaking" many *years* in the future. *Id.* at 22.

The Commission's shifting and contradictory arguments ignore both the letter and the spirit of this Court's decision. First, *actually* freezing Hikvision's U.S. business—as the Commission has done—plainly conflicts with this Court's rejection of the agency's earlier actions "essentially fr[eezing]" that business.

---

[1] This brief cites the page numbers of filed documents as they appear in the red CM/ECF system stamp.

1

*Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 950 (D.C. Cir. 2024). Second, the Commission's claim that it can take years to provide "comprehensible guidance about what falls within the bounds of 'critical infrastructure'" cannot be squared with the Court's ruling that Hikvision's *urgent* need for guidance, *see id.*, renders the Commission's often years-long declaratory ruling process inadequate here.

The Commission's arguments also invoke the wrong standard. As the Commission acknowledges, Opp. 22, mandamus actions are for suits under the Administrative Procedure Act for agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), *i.e.*, for challenging agency *inaction*. Here, however, Hikvision argues that the Commission has, by imposing the freeze, *acted* to readopt a total ban after this Court's decision striking the earlier one down. This action by the Commission is inconsistent with this Court's decision, and the Court certainly need not tolerate that inconsistency for years before correcting it. In similar cases, the Court has not applied the mandamus standard. But even if the mandamus standard were to govern here, it is satisfied as further set forth below.

# ARGUMENT

A. **The Commission's Freeze on *All* Hikvision Applications for Equipment Authorization Conflicts with this Court's Decision.**

   1. **The Commission Admits that it has Imposed an Indefinite, Across-the-Board Ban on Hikvision Products.**

The Commission admits that there is a total administrative "freeze" on all Hikvision applications and indicates that it will not end any time soon: The freeze must continue until Hikvision has "an approved compliance plan"; the Commission cannot approve a compliance plan until it "better defines" what "critical infrastructure" means; and no one can force the agency even to start adopting such a definition for "four years or more." Opp. 17, 20, 23. Thus, the Commission's brief all but promises a years-long blockade on any Hikvision products.

Yet the Commission *also* inexplicably denies that it has adopted "an indefinite across-the-board ban," Opp. 17 (cleaned up), attempting to dismiss the freeze as mere "staff-level action." *Id.* This is pure misdirection. The very nature of the "freeze" is that Hikvision cannot file an application for approval of a device with the Bureau and then seek Commission review. And as set forth in our Motion, *see* Mot. 12–14, the company's efforts to do so and its inquiries regarding the freeze—as well as the motions for emergency relief, *see* Opp. 13—went nowhere. Nor has Hikvision received any substantive response to its detailed ex parte letters

to the Commission providing examples of equipment that cannot possibly be covered by the statute and requesting consideration at least of *those* devices. *See, e.g.*, Letter from John T. Nakahata, counsel to Hikvision, to Marlene H. Dortch, Secretary, FCC, ET Docket No. 21-232 (filed Oct. 8, 2024) ("October 8, 2024 Ex Parte") (attached to Mot. as Composite Ex. A). The agency also has not responded to the company's request to the full Commission to lift the freeze. *See* Mot. Ex. H.

This is a shell game. Hikvision cannot file applications because there is a freeze, but, according to the Commission, the company cannot challenge the freeze because it is mere "staff-level action" that cannot be reviewed. These attempts to evade accountability amply warrant the Court's intervention.[2]

The Commission also cannot defend the across-the-board ban on the basis that it "is not so straightforward" whether products like vacuum cleaners and warehouse robots "are, or are not, video surveillance equipment." Opp. 18. The Commission claims that the vacuum cleaner mentioned in Hikvision's Motion *might* be video surveillance equipment because it purportedly "contained a camera,

---

[2] The Commission likewise cannot evade review with its repeated suggestions that agency "deliberation is ongoing" in response to the Court's decision. *See, e.g.,* Opp. 17, 19, 23. Unspecified "deliberations" that may go on for years do not justify ignoring this Court's guidance that the agency cannot freeze all Hikvision applications and do not meet the Court's requirement of urgent guidance.

4

had Wi-Fi capability, and was capable of remote operation," and maintains that Hikvision acknowledged as much. *Id.*

First, however, Hikvision certainly does not maintain that the Commission must *approve* any specific application. *Contra id.* at 19. The problem, again, is that the current freeze prevents Hikvision from even seeking approval of devices that it believes are plainly not covered by the statute. The Commission is entitled, of course, to provide a reasoned explanation for rejecting an application—but that would require justifying the far-fetched view that a vacuum cleaner or a device designed to move boxes around a warehouse is "video surveillance equipment," and subject any such decision to judicial review.

Second, the Commission's speculations about Hikvision's non-covered examples are factually wrong and ignore the record. With respect to the vacuum cleaner, Hikvision's October 8, 2024 Ex Parte stated that "with no connectivity or surveillance camera, the product cannot be equipment used in a fixed or mobile network or for video surveillance" and is therefore not video surveillance equipment. October 8, 2024 Ex Parte at 2. The company's online product listing further indicates that while this vacuum has "infrared sensor[s]" to detect floor areas needing cleaning and "voice prompts" for low battery level and other alerts, the device has no networking capability (and thus no ability to telecommunicate)

5

nor any cameras.[3]  Thus, it is entirely "straightforward," Opp. 18, that this device is *not* video surveillance or telecommunications equipment.

The record shows that the warehouse robot in our Motion is also *non-covered* equipment.  Attachment B to Hikvision's October 8, 2024 Ex Parte—which is also part of Composite Exhibit A to our Motion—provides detailed images, descriptions, and specifications of the "robot," which is an automated rolling platform for moving packages.  The device has front laser obstacle avoidance and side ultrasonic obstacle avoidance, laser simultaneous localization and mapping (SLAM) navigation to avoid obstacles, and top and bottom cameras to recognize QR codes but that cannot record or store videos/images.  October 8, 2024 Ex Parte at 2.  It does *not* have "video surveillance" capability within any reasonable meaning of that term.  And while the robot has Wi-Fi to allow it to receive operating directions remotely—like, for example, many remote-controlled robotic lawn mowers—there is nothing in the record that suggests these are transmissions of "high quality voice, data, graphics, and video

---

[3] *See EZVIZ RH1 Smart Cordless Wet & Dry Vacuum Cleaner*, EZVIZ (2025), https://www.ezviz.com/product/rh1/41733?.

telecommunications,"[4] and thus no basis for a conclusion that this robot is "telecommunications equipment."[5]

Notably, these are only examples—the current freeze applies to *any* Hikvision filing for authorization for *any* electronic device producing RF emissions, even unintentionally. So, the current freeze would apply to a microwave oven, an LED bedside clock, or an electric range—equipment that cannot possibly be "video surveillance" or "telecommunications" equipment, let alone be used to secure critical infrastructure. The Commission has contorted the statute beyond recognition and seized power to do what Congress did not, *i.e.*, freeze Hikvision entirely out of the U.S. market, without any judicial review of its actions.

**2. The Commission Ignores Critical Parts of this Court's Decision.**

While the Commission argues that Hikvision seeks relief "beyond the scope of this Court's mandate," Opp. 3, it can do so only by ignoring key portions of the *Hikvision* decision.

---

[4] *Protecting Against National Security Threats to the Communications Supply Chain*, Report & Order et al., 37 FCC Rcd. 13493, 13569 ¶ 195 (rel. Nov. 25, 2022).

[5] It bears emphasis, moreover, that the Commission's response does not even suggest that either a vacuum cleaner or a warehouse robot could be "telecommunications equipment," and of course they are not. The Commission claims—in conflict with the record—only that they may be "video surveillance" equipment.

First, as stated above, the Commission's adoption of a total freeze on Hikvision's account is flatly inconsistent with the Court's rejection of the agency's previous action "essentially fr[eezing]" Hikvision's U.S. business. *Hikvision*, 97 F. 4th at 950. If a virtual freeze is impermissible, then an actual freeze plainly is as well.

As also noted above, this Court rejected the Commission's argument that Hikvision should be required to proceed by utilizing the Commission's lengthy declaratory ruling process to determine what infrastructure is "critical." *Id.* But just as this Court's rejection of "essentially fr[eezing]" Hikvision's business does not permit the Commission to *actually* freeze Hikvision's business, *id.*, the Court's rejection of the often years-long declaratory ruling path does not permit the Commission to take even *longer* to provide the guidance required by this Court's decision. To the contrary, the Court's rejection of the declaratory ruling process shows that the Court was aware of the need for an *urgent* way forward that is "reasonable [and] consistent with the statute." *Id.*

The Commission also argues that it is irrelevant that this Court *vacated* the Commission's overbroad interpretation of the statute. That is incorrect. While the Court could have left the Commission's broad ban in place during remand, it instead explained that "[v]acatur is the normal remedy for unsustainable agency action." *Id.* Accordingly, when this Court's mandate was issued, it erased the

*Order*'s "unsustainable" overbroad rule and left in its place only the underlying statutory ban limited to (i) "video surveillance and telecommunications equipment" that is (ii) used "[f]or the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes."[6] That statutory ban on its face has a limited scope that cannot sustain an across-the-board ban or freeze of new applications.

The Commission also attempts to justify refusing to review *any* Hikvision requests for authorization because the company has no compliance plan in place. But while the Commission is correct that there is no compliance plan in place, that is because the Commission refuses to even consider the one Hikvision submitted long ago. In the face of this Court's mandate to provide urgent guidance, this is just another shell game. The Opposition points to the Commission-imposed requirement of a compliance plan—while ignoring the Commission's refusal to even consider a compliance plan—to justify ignoring this Court's instruction to provide precisely the kind of guidance set forth in Hikvision's Compliance Plan. Again, the Commission cannot employ this kind of chicanery to avoid accountability: If the Commission does not approve the Compliance Plan, it must issue a reviewable decision explaining specifically how it is inadequate.

---

[6] *See* John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, § 889(f)(3)(B), 132 Stat. 1636.

9

In short, this Court's decision makes clear that (1) the Commission cannot "essentially" or *actually* freeze all of Hikvision's U.S. business; and (2) the Commission must act expeditiously to provide the required "guidance" concerning the meaning of critical infrastructure. The Commission has violated both those directions. Enforcing this Court's mandate accordingly requires the Commission to *both* lift the freeze *and* act swiftly to issue the guidance required by the Court.[7]

**B.     The Court May *Either* Enforce the Mandate to Invalidate the Commission's Ban *or* Grant Mandamus to Do the Same.**

The Commission argues that Hikvision should be seeking mandamus rather than to enforce the mandate. Opp. 22–23. That is both wrong and irrelevant. While enforcing the mandate is the most appropriate avenue here, the Court could also properly issue mandamus because that standard is satisfied as well.

The Commission's argument that Hikvision should have to pursue mandamus misconstrues Hikvision's claim. While mandamus is for challenging agency *inaction*, Hikvision's claim here is the Commission has—without addressing this Court's decision in any way—*acted* to reimpose an absolute ban through the freeze on Hikvision applications. The cases cited by the Commission

---

[7] While Hikvision has proposed that the Commission can act *most* expeditiously to provide the required "comprehensible guidance" by adopting the company's Compliance Plan, Hikvision recognizes that other avenues of prompt action are also open to the Commission. However, those other avenues must provide prompter relief than the declaratory ruling process to be consistent with this Court's decision.

10

regarding agency action unreasonably withheld, *see* Opp. 22–23, are thus inapplicable. Again, Hikvision seeks enforcement of this Court's mandate to bar Commission action inconsistent with the decision, which this Court's precedents support as set forth in our Motion. *See* Mot. 25–26. Those cited cases do not apply the multi-part mandamus test; they simply ask whether the agency has flouted the Court's directives, as has happened here.

It is true that Hikvision *also* seeks the guidance that this Court's *Hikvision* decision mandates in addition to lifting the across-the-board freeze on its account. But Hikvision's claim—as set forth above—is that failing to provide that guidance *in a timely manner* is inconsistent with both the letter and the spirit of this Court's decision. Once again, then, Hikvision seeks to enforce this Court's decision.

Finally, there is no need to quibble over the semantics of "enforcing the mandate" versus issuing "mandamus" here, because the mandamus standard is also met. A party seeking mandamus must show that its "right to issuance of the writ is clear and indisputable," and that "no other adequate means to attain the relief exist." *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1063 (D.C. Cir. 1998) (cleaned up). But both the Supreme Court and this Court have held that these standards are satisfied when an appellate mandate is not faithfully applied. In *Baltimore & O.R. Co. v. United States*, 279 U.S. 781 (1929), for example, the Supreme Court held when a lower authority "misconstrues our mandate, its action

11

may be controlled . . . by writ of mandamus." *Id.* at 785. And in *Yablonski v. United Mine Workers of America*, 454 F.2d 1036, (D.C. Cir. 1971), this Court indicated that a "case may be sufficiently extraordinary for mandamus" when it is required to hold "a lower court to the terms of an appellate tribunal's mandate." *Id.* at 1039. The mandamus standard is thus satisfied here for the same reasons that this Court should enforce its mandate.

## CONCLUSION

The freeze on all Hikvision applications for equipment authorization is causing enormous harm to the company and is not what Congress specified in the Secure Equipment Act or what this Court endorsed in *Hikvision*. This Court should require the Commission to promptly (1) lift its freeze on Hikvision's account; and (2) act on Hikvision's Compliance Plan or otherwise issue the guidance required by *Hikvision* within four months.

Dated: February 24, 2025               Respectfully submitted,

/s/ Christopher J. Wright

Christopher J. Wright
Timothy J. Simeone
John T. Nakahata
HWG LLP
1919 M St. NW, 8th Floor
Washington, DC 20036
(202) 730-1300
cwright@hwglaw.com

Tobias S. Loss-Eaton
Sidley Austin LLP
1501 K Street NW
Washington DC 20005
tlosseaton@sidley.com

# CERTIFICATE OF SERVICE

I certify that on this 24th day of February 2025, the foregoing brief was filed via CM/ECF. Service was accomplished on all parties or their counsel of record via CM/ECF.

/s/ Christopher J. Wright
Christopher J. Wright

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Times New Roman font.  I further certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(f), it contains 2,594 words according to the word-count feature of Microsoft Word.

/s/ Christopher J. Wright
Christopher J. Wright
